IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY – CAMDEN VICINAGE

| | |
|---|---|
| DOUGLAS CHARLES STROBY,<br><br>     Plaintiff,<br><br>  v.<br><br>EGG HARBOR TOWNSHIP,<br>CHIEF BLAZE CATANIA; OFFICER<br>JEFFREY LANCASTER, jointly, severally,<br>and/or in the alternative,<br><br>     Defendants. | Case No. 1:09-cv-00698-JEI-KMW<br><br>Civil Action |

PLAINTIFF'S BRIEF IN SUPPORT OF APPLICATION TO COMPEL
DISCOVERY

JACOBS & BARBONE, P.A.
A Professional Corporation
1125 Pacific Avenue
Atlantic City, New Jersey  08401
(609)  348-1125
Attorneys for Plaintiff

On the Brief:

    Arthur J. Murray, Esquire

## PROCEDURAL HISTORY

Plaintiff Douglas Charles Stroby currently has a twelve count complaint pending against the named Defendants.  The operative facts of the complaint include:

> On or about September 30, 2008, Plaintiff DOUGLAS CHARLES STROBY owned and resided at property located at 33 Marsh Road in Egg Harbor Township, New Jersey.

> On the aforementioned date, as Plaintiff DOUGLAS CHARLES STROBY was relaxing in his home, he observed a marked Egg Harbor Township Patrol Vehicle parked in front of his home.

> The aforementioned Egg Harbor Township Patrol Vehicle was driven to and parked in front of the home of Plaintiff DOUGLAS CHARLES STROBY by Defendant OFFICER JEFFREY LANCASTER.

> At the time he drove the aforementioned Egg Harbor Township Patrol Vehicle and parked it in front of the home of Plaintiff DOUGLAS CHARLES STROBY, Defendant OFFICER JEFFREY LANCASTER was on duty, armed, and in full uniform.

> At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER dispatched by 911 operators or other dispatchers to the home of Plaintiff DOUGLAS CHARLES STROBY for any reason.

> At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER ordered by superior officers to report to the home of Plaintiff DOUGLAS CHARLES STROBY or undertake a community caretaking visit at the home of Plaintiff DOUGLAS CHARLES STROBY.

> At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER requested by any private citizen to report to the home of Plaintiff DOUGLAS CHARLES STROBY or undertake a community caretaking visit at the home of Plaintiff DOUGLAS CHARLES STROBY.

> At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER at home of Plaintiff DOUGLAS CHARLES STROBY at the request of Plaintiff DOUGLAS CHARLES STROBY for any reason.

> At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of an arrest warrant while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of a search warrant while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of court order while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of probable cause of perceived criminal activity or activity which would qualify as a disorderly persons' offense or a petty disorderly persons' offense while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of reasonable suspicion of perceived criminal activity or activity which would qualify as a disorderly persons' offense or a petty disorderly persons' offense while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of explicit consent or permission of Plaintiff DOUGLAS CHARLES STROBY while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of implicit consent or permission of Plaintiff DOUGLAS CHARLES STROBY while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

At no time on September 30, 2008 was Defendant OFFICER JEFFREY LANCASTER operating under the auspices of any emergency circumstances or exigency while at or on or in the property of Plaintiff DOUGLAS CHARLES STROBY.

On September 30, 2008, upon getting up to determine why a marked Egg Harbor Township Patrol Vehicle was parked in front of his home, Plaintiff DOUGLAS CHARLES STROBY unexpectedly came upon Defendant OFFICER JEFFREY LANCASTER who had illegally gained entry into his home by breaking and entering into same in full uniform, armed, and on duty.

In an effort to protect himself, his family as well as his property from an armed intruder, a physical altercation ensued between Plaintiff DOUGLAS CHARLES STROBY and Defendant OFFICER JEFFREY LANCASTER.

During the prolonged struggle between Plaintiff DOUGLAS CHARLES STROBY and Defendant OFFICER JEFFREY LANCASTER, the interior of the house sustained damage and Plaintiff DOUGLAS CHARLES STROBY sustained physical injuries as well as subsequent emotional trauma.

Plaintiff DOUGLAS CHARLES STROBY was eventually able to force the armed intruder Defendant OFFICER JEFFREY LANCASTER from his home.

Because he had recognized the armed intruder as Defendant OFFICER JEFFREY LANCASTER, upon forcing him out of his house, Plaintiff DOUGLAS CHARLES STROBY inquired why he had engaged in a criminal act of breaking and entering into his property.

Instead of responding, Defendant OFFICER JEFFREY LANCASTER, indicated that his sun glasses had been lost in the physical confrontation and he needed to retrieve them.

For a second time, in the absence of a warrant, court order, permission, consent, or any exigency, Defendant OFFICER JEFFREY LANCASTER committed another criminal offense by again breaking and entering into the property of Plaintiff DOUGLAS CHARLES STROBY.

After retrieving his sun glasses, Defendant OFFICER JEFFREY LANCASTER left the property of Plaintiff DOUGLAS CHARLES STROBY in the same manner in which he had arrived, i.e., in a marked Egg Harbor Township Patrol Vehicle.

At no time was Plaintiff DOUGLAS CHARLES STROBY questioned, interrogated, formally arrested, or handcuffed.

Plaintiff DOUGLAS CHARLES STROBY immediately reported the actions of Defendant OFFICER JEFFREY LANCASTER to the Internal Affairs Unit of the Egg Harbor Township Police Department.

Upon information and belief, following an incomplete and inadequate investigation, certain charges were sustained against Defendant OFFICER JEFFREY LANCASTER and he received a 60 day suspension without pay.

Defendant OFFICER JEFFREY LANCASTER was not charged with a criminal offense, was not charged with a disorderly persons' offense, was not charged with a petty disorderly persons' offense and was not charged with violating any ordinances of Egg Harbor Township.

Defendant OFFICER JEFFREY LANCASTER was not terminated from employment.

At any and all times relevant hereto, Plaintiff DOUGLAS CHARLES STROBY, was doing nothing in contravention to the laws, statutes and/or ordinances of the State of New Jersey, County of Atlantic or EGG HARBOR TOWNSHIP and Defendant OFFICER JEFFREY LANCASTER was not acting upon arrest warrant, search warrant, court order, probable cause, reasonable suspicion, permission, consent, emergency circumstances or exigency.

Without probable cause and/or reasonable suspicion, Plaintiff DOUGLAS CHARLES STROBY was violated by way of entry into his home twice, struck, restrained, and detained without a basis in fact or law for said entry, striking, restraining, or detention.

(See Court's Docket Entry #16).

Based on this factual predicate, Plaintiff Douglas Charles Stroby has pled the following causes of action:

1. Violations of 42 U.S.C. Section 1983 against all Defendants;
2. Violations of New Jersey's Civil Rights Act against all Defendants;
3. Claims of false imprisonment against Defendant Lancaster;
4. Claims of trespass against Defendant Lancaster;
5. Claims of invasion of privacy against Defendant Lancaster;
6. Claims of negligent hiring by Defendant Egg Harbor Township;
7. Claims of negligent training by Defendants Catania and Egg Harbor Township;
8. Claims of negligent physical contact by Defendant Lancaster;
9. Claims of assault and battery by Defendant Lancaster; and
10. Claims of *respondeat superior* for all negligent state claims.

(See Court's Docket Entry #16).

The parties have engaged in written discovery as well as have taken depositions. Defendants Catania and Lancaster were both deposed on December 29, 2009. During the depositions of Defendants Catania and Lancaster, their attorneys both objected to a line questioning by counsel for Plaintiff which sought information about an internal

affairs investigation in which Defendant Lancaster was a target, which said investigation took place after September 30, 2008, the date of the incident involving Plaintiff.

The deposition of Defendant Catania is attached hereto as Exhibit A and the operative pages where the questioning and objections took place are 45-50. The deposition of Defendant Lancaster is attached hereto as Exhibit B and the operative pages where the questioning and objections took place are 14-16.

## THE APPROPRIATE PURPOSE AND SCOPE OF DISCOVERY

Pursuant to F.R.C.P. 26(b)(1):

> Unless otherwise limited by Court Order, the scope of discovery is as follows: the parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents. . .and the identity and location of persons who know of any discoverable matter . . . **Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence**. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(Emphasis added).

The appropriate scope of discovery in any case is initially defined by the factual averments in the Complaint. Discovery demands which are reasonably calculated to lead to the discovery of admissible evidence must bear some factual nexus to the information and documents sought. Discovery mechanisms have as a purpose to discover the facts surrounding the particular violations alleged.

## LEGAL ARGUMENT

### REGARDLESS OF THE ADMISSIBILITY OF A SUBSEQUENT INTERNAL AFFAIRS INVESTIGATION OF DEFENDANT LANCASTER AND INTERVIEW OF DEFENDANT LANCASTER, BOTH HAVE THE POTENTIAL OF LEADING TO DISCOVERABLE INFORMATION AND ARE APPROPRIATE FODDER FOR DEPOSITION QUESTIONING.

Plaintiff Douglas Charles Stroby concedes that in all likelihood the subsequent internal affairs investigation and interview of Defendant Lancaster would not be admissible at the time of trial.  However, that is not the standard for purposes of discovery.

Defendant Lancaster was interviewed as part of that internal affairs investigation. That interview could lead to evidence calling into question the veracity of Defendant Lancaster.  Such evidence might indeed not only be relevant, but also be admissible in this matter.

Additionally, Plaintiff Douglas Charles Stroby has made allegations of not only negligent hiring, but also negligent training.  If the underlying facts of the subsequent internal affairs probe mirrored or closely resembled the facts of this matter, such evidence might not only be germane, but could also potentially be admissible.

Moreover, if other third party police officers or citizens were questioned, it is possible that questioning involved "past" matters involving Defendant Lancaster.  Those "past" matters might very well include this matter, which would make the material relevant and perhaps admissible.

The possibilities are endless.  Needless to say, Plaintiff Douglass Charles Stroby should be entitled to the underlying investigative materials of the subsequent internal affairs investigation involving Defendant Lancaster, including his transcribed/taped

statement as well as should be allowed to question both Defendant Catania and Defendant Lancaster as to same.  Moreover, defense counsel should have to pay for both the Court reporter's time as well as for Plaintiff's counsel's time for having to reappear for the same depositions twice.  It should be noted that a Consent Discovery Confidentiality Order is already in place protecting Defendants from any public disclosure of the requested information.

At a minimum, the Court should review the operative documents *in camera* to determine whether or not they could potentially lead to discoverable material in light of the factual predicate of this matter.

Respectfully Submitted,

JACOBS & BARBONE, P.A.

/s/ Arthur J. Murray