# EXHIBIT B

**1**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY - CAMDEN VICINAGE
CIVIL ACTION NO. 1:09-cv-00698-JEI-KMW

DOUGLAS CHARLES STROBY,  )
             )
     Plaintiff(s),       )
             )     DEPOSITION OF
   vs.       )     JEFFREY LANCASTER
             )
EGG HARBOR TOWNSHIP,     )
CHIEF BLAZE CATANIA;     )
OFFICER JEFFREY          )
LANCASTER, jointly,      )
severally, and/or in     )
the alternative,         )
             )
     Defendant(s).       )

REPORTED BY CATHERINE M. WYBLE, CCR, CMR, Notary Public for the State of New Jersey, in the offices of Egg Harbor Township Municipal Building, Conference Room 108, 3515 Bargaintown Road, Egg Harbor Township, NJ, on Tuesday, December 29, 2009, commencing at 12:22 p.m.

PATRICIA ANN TERRACCIANO
Certified Court Reporters
One South Colonial Drive
Bordentown, NJ  08505
(609) 298-6615 * FAX (609) 298-2252

---

**2**

APPEARANCES:

JACOBS & BARBONE, ESQUIRES
BY: ARTHUR J. MURRAY, ESQUIRE
1125 Pacific Avenue, Atlantic City, NJ 08401
Counsel for the Plaintiff

BARKER, SCOTT & GELFAND
BY: A. MICHAEL BARKER, ESQUIRE
210 New Road, Linwood Greene, Suite 12, Linwood, NJ 08221
Counsel for Defendant Egg Harbor Township

MICHELE C. VERNO, LLC
BY: MICHELE C. VERNO, ESQUIRE
1001 Tilton Road, Suite 205, Northfield, NJ 08225
Counsel for Defendant Jeffrey Lancaster

ALSO PRESENT:

DOUGLAS CHARLES STROBY

---

**3**

INDEX

DEPONENTS:

JEFFREY LANCASTER

| | |
|---|---|
| Examination by Mr. Murray | 4, 70 |
| Examination by Mr. Barker | 68 |
| Examination by Ms. Verno | 69 |

EXHIBITS FOR IDENTIFICATION:

None presented.

REQUESTS FOR DOCUMENTS:

None requested.

---

**4**

1  JEFFREY LANCASTER, having been first duly
2  sworn or affirmed at 12:22 p.m., was examined and
3  testified as follows:
4             * * *
5  EXAMINATION BY MR. MURRAY:
6      Q.   Officer Lancaster, good morning. My name
7  is Arthur Murray. You and I have met before. I have
8  taken your deposition before; is that correct? Weren't
9  you deposed in the Pierre Reid case?
10     A.   Yes.
11     Q.   I'm about to take your deposition again.
12 Other than the Pierre Reid case, have you ever been
13 through a deposition before?
14     A.   No.
15     Q.   I'm going to go over the general
16 instructions with you just in case you forgot them from
17 that case. A deposition is essentially a series of
18 oral questions and answers. I'm going to ask you
19 questions. You're going to answer them. Even though
20 we're in the informal setting of a conference room
21 today, the testimony you give has the same force and
22 effect as if you were testifying before a judge and a
23 jury. The oath you have taken to tell the truth is the
24 same oath you would take in front of a judge and a
25 jury, and the same penalties of perjury apply. Do you

MURRAY - LANCASTER                13

1   Q.   And was that decision against you?
2   A.   Yes.
3   Q.   And was there any further level of appeal
4   you could take within the union as it relates to that
5   issue?
6   A.   No.
7   Q.   And when did you get that final
8   determination from the union appeal process? Was it in
9   the calendar year 2009?
10  A.   Yes.
11  Q.   To your knowledge, have you turned over all
12  the documentation from the appeal and that grievance
13  that you had copies of to Mrs. Verno?
14  A.   Yes.
15  Q.   Separate and apart from the union
16  grievance, is there anything else you did to try to
17  appeal the city's decision to not provide you with a
18  defense counsel?
19  A.   Not at all.
20  Q.   Other than the union grievance, have you
21  done anything else to try finding out whether or not
22  you have coverage through any other source as it
23  relates to this litigation?
24  A.   No.
25  Q.   Have you turned over a copy of the lawsuit

MURRAY - LANCASTER                14

1   to your homeowners insurance carrier?
2   A.   No.
3   Q.   Did you have homeowners insurance as of
4   September 30, 2008?
5   A.   I believe so.
6   Q.   Other than the Pierre Reid case and this
7   case -- I think I asked you this, but have you given
8   any other depositions?
9   A.   No, sir.
10  Q.   Have you ever given a statement under oath
11  where you were sworn to tell the truth and had to give
12  a statement under oath other than in a court
13  proceeding?
14  A.   No.
15  Q.   Have you ever undergone an internal affairs
16  interview?
17  A.   Yes.
18  Q.   How many internal affairs interviews have
19  you had?
20  A.   I believe three.
21  Q.   Now, I have been provided with two
22  transcripts that you gave as it relates to the Stroby
23  incident. Are you counting that as two of the three,
24  or is that one of the three?
25  A.   I would count that as one.

MURRAY - LANCASTER                15

1   Q.   Okay. The other two internal affairs cases
2   that you have been interviewed, were you a witness or
3   were you the target of the investigation?
4   A.   One I was the target of the investigation I
5   believe. In the Pierre Reid reference, I'm not sure.
6   At the time I was new, and...
7   Q.   And generally, other than the Pierre Reid
8   one and this one, what was the third one about?
9        MS. VERNO: I'm going to object to
10  that. If you can define the time frame of that.
11       MR. MURRAY: Okay.
12  Q.   The third one, did it happen before or
13  after the incident involving Mr. Stroby?
14  A.   After.
15  Q.   Was the complainant in that case a private
16  citizen or a fellow officer?
17       MS. VERNO: I'm going to object to that
18  and instruct Mr. Lancaster not to answer that as it was
19  subsequent to the incident involved here today.
20       MR. MURRAY: Okay. I just want to make
21  sure it's perfectly aware to counsel that I'm going to
22  be making an application to the magistrate, and you
23  guys will be paying for both my time and the court
24  reporter's time when we come back, and given the fact
25  that Mr. Lancaster does not have coverage for this

MURRAY - LANCASTER                16

1   incident, that means he will be paying out of his own
2   pocket as it relates to this line of questioning. So I
3   just want to make sure, Ms. Verno, that you know what
4   route you're going down separate and apart from
5   Mr. Barker's decision when he has got a source of money
6   paying me and paying the court reporter.
7        MS. VERNO: We are aware of that,
8   Mr. Murray.
9        MR. MURRAY: Okay.
10       MR. BARKER: You have my objection on
11  this.
12       MR. MURRAY: I have got your objection,
13  Mr. Barker. So we'll deal with it accordingly.
14  Q.   How many times on the other incident that
15  you were interviewed on -- were you interviewed once or
16  more than once?
17       MS. VERNO: Objection. Are we speaking
18  about the subsequent incident?
19       MR. MURRAY: Yeah. Right now I just
20  want to know how many times he was interviewed. I'm
21  not going over the substance of the allegations or
22  anything else. I'm just finding out the number of
23  times he was interviewed by internal affairs. Are you
24  objecting to that?
25       MS. VERNO: No.

MURRAY - LANCASTER                     17

1   A.   Once.
2   Q.   Other than meeting with internal affairs
3   and meeting with your own attorney, have you ever met
4   and discussed the Stroby incident with anybody else?
5   A.   No.
6   Q.   Do you have an e-mail account assigned to
7   you as an Egg Harbor Township patrol officer?
8   A.   Yes.
9   Q.   And what is your e-mail?
10  A.   jlancaster@ehtpd.com.
11  Q.   And do you use that e-mail address?
12  A.   Yes.
13  Q.   Do you receive e-mails as well as transmit
14  e-mails?
15  A.   Yes.
16  Q.   Do you save e-mails that you receive?
17  A.   Yes.
18  Q.   How do you save them?
19  A.   I leave them -- I don't technically save
20  them. I just don't delete them. They stay on that
21  file for however long the system itself allows.
22  Q.   And do you know what that time frame is, in
23  other words, how long the system allows them to stay
24  before they are automatically deleted, if they are at
25  all?

MURRAY - LANCASTER                     18

1   A.   No, I do not.
2   Q.   Do you know whether they are automatically
3   deleted after some period of time?
4   A.   I do not know.
5   Q.   And is the same true as it relates to
6   e-mails that you send? You keep them in your sent file
7   and don't actually delete them?
8   A.   That's correct.
9   Q.   And so long as the system didn't delete
10  them, you would not have actually deleted them?
11  A.   True.
12  Q.   Do you ever actually print out hard copies
13  of e-mails?
14  A.   Not normally.
15  Q.   Have you undertaken a search of your
16  electronic mails to determine whether or not there are
17  any e-mails relevant to this litigation involving
18  Mr. Stroby?
19  A.   No.
20  Q.   Do you believe there would be any e-mails
21  on your system that would be relevant to the Stroby
22  incident in terms of either the investigation of that,
23  the internal affairs aspect of that, the coverage issue
24  we have talked about earlier, anything?
25  A.   I don't believe so.

MURRAY - LANCASTER                     19

1   Q.   You understand that you are a named
2   defendant in this lawsuit, do you not?
3   A.   Yes.
4   Q.   You also understood that you were a named
5   defendant in the Pierre Reid lawsuit, correct?
6   A.   Yes.
7   Q.   Other than those two lawsuits, have you
8   ever been a named defendant in a lawsuit before in your
9   capacity as a police officer for Egg Harbor Township?
10  A.   No.
11  Q.   Have you ever been a named defendant in a
12  criminal citation filed by a private citizen against
13  you in your capacity as a police officer for Egg Harbor
14  Township?
15  A.   No.
16  Q.   You came in the department in what year?
17  A.   2002.
18  Q.   And you still hold the rank of patrol
19  officer?
20  A.   Yes.
21  Q.   And did you have any law enforcement
22  experience prior to coming to Egg Harbor Township?
23  A.   No.
24  Q.   And you're the graduate of a police
25  academy; is that right?

MURRAY - LANCASTER                     20

1   A.   Yes.
2   Q.   What academy did you graduate from?
3   A.   Atlantic County.
4   Q.   And what was your year of graduation?
5   A.   2003.
6   Q.   And have you received additional training
7   as a police officer since coming out of the academy?
8   A.   Yes.
9   Q.   Has that been training you have been
10  required to go to or that you have requested to go to
11  or a combination of both?
12  A.   A combination of both.
13  Q.   Before your deposition, we took the
14  deposition of the chief of police, and he indicated
15  that training is now kept on-line, and you can punch in
16  your badge number and actually get a printout of the
17  training you have received. Are you aware of that?
18  A.   Yes.
19  Q.   Have you actually punched in your badge
20  recently and looked at your profile of training?
21  A.   No.
22  Q.   Have you ever looked at your profile of
23  training?
24  A.   No.
25  Q.   Do you know whether or not what is on-line