IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY - CAMDEN

| | |
|---|---|
| DOUGLAS CHARLES STROBY,<br>                    Plaintiff,<br>     v.<br><br>EGG HARBOR TOWNSHIP;<br>CHIEF OF POLICE BLAZE CATANIA; and,<br>PATROLMAN JEFFREY LANCASTER<br>Jointly, Severally, or in the Alternative,<br>                    Defendants. | Civil Action Number<br>09-cv- 698 (JEI/KMW) |

---

## BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

On Behalf of Defendants
The Township of Egg Harbor
Chief of Police Blaze Catania

---

A. Michael Barker, Esquire
Barker, Scott & Gelfand
a Professional Corporation
Linwood Greene – Suite 12
210 New Road
Linwood, New Jersey 08221
(609) 601-8677
AMBarker@BarkerLawFirm.net

On the Brief:
A. Michael Barker, Esquire
Vanessa E. James, Esquire

# TABLE OF CONTENTS

I.   PREAMBLE....................................................................................1

II.  THE PARTIES ...........................................................................2

III. PROCEDURAL HISTORY ..............................................................3

IV.  STATEMENT OF FACTS ...............................................................8

V.   LEGAL ARGUMENT ......................................................................8

    A.   COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST EHT AND CHIEF CATANIA SHOULD BE DISMISSED WITH PREJUDICE BECAUSE OFFICER LANCASTER WAS NOT ACTING UNDER COLOR OF LAW ........................8

        1.   Statutory Provisions of 42 USC §1983 ............................8
        2.   Legal Authority for "Under Color of Law" ........................9
        3.   Analysis of the Instant Case ......................................16

    B.   IN THE ALTERNATIVE, EVEN IF THIS COURT ACCEPTS PER ARGUENDO THAT LANCASTER ACTED UNDER COLOR OF LAW, COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST EHT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE NO EHT POLICY OR CUSTOM INFLICTED THE INJURIES ................................................23

    C.   IN THE ALTERNATIVE, EVEN IF THE COURT DETERMINES THAT LANCASTER WAS ACTING UNDER COLOR OF LAW, COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST CHIEF CATANIA SHOULD BE DISMISSED WITH PREJUDICE BECAUSE CHIEF CATANIA WAS NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATION ..........................................25

    D.   STROBY'S NEW JERSEY CIVIL RIGHTS ACT CLAIMS, COUNT IV, PURSUANT TO NJSA 10:6-2, SHOULD BE

DISMISSED BECAUSE STROBY HAS NOT SUFFICIENTLY PLED HIS CLAIMS; AND, FURTHERMORE, THE SAME ANALYSIS WHICH APPLIES TO DISMISS STROBY'S FEDERAL CONSTITUTIONAL CLAIMS SHOULD ALSO CAUSE THE COURT TO DISMISS ANY OF STROBY'S CLAIMS UNDER THE NJCRA..................................................................27

    1.    Failure to State a Cause of Action ...............................27
    2.    Federal Anaylsis Under §1983 Also Applies To New Jersey Civil Rights Act ................................................28

E.    STROBY'S COUNT VIII, NEGLIGENT HIRING, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR A COMMON LAW CLAIM OF NEGLIGENT HIRING IN NEW JERSEY..................................................................29

F.    STROBY'S COUNT IX, NEGLIGENT TRAINING, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR A COMMON LAW CLAIM OF NEGLIGENT TRAINING IN NEW JERSEY ...............................................................32

G.    STROBY'S COUNT XII, NEGLIGENCE BASED ON A THEORY OF *RESPONDEAT SUPERIOR* AGAINST EGG HARBOR TOWNSHIP, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR *RESPONDEAT SUPERIOR* LIABILITY IN NEW JERSEY ................................................35

H.    SUMMARY JUDGMENT STANDARD OF REVIEW .................37

VI.    CONCLUSION..................................................................38

## TABLE OF CITATIONS

Anderson v Liberty Lobby, Inc.,
    477 US 242 (1986) ................................................................. 37

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009) ........................................................ 28
    Citing, Bell Atlantic Corp. et al. v Twombly, et al.,
    550 US 544 (2007) ............................................................. 28

Barna v. City of Perth Amboy,
    42 F.3d 809 (3d Cir. 1994) .............................................. 10, 11, 22

Bell Atlantic Corp. et al. v Twombly, et al.,
    550 US 544 (2007) ............................................................. 28

Berg v County of Allegheny,
    219 F.3d 261 (3d Cir. 2000) ........................................... 23

Bielevicz v Dubinon,
    914 F.2d 845 (3d Cir. 1990) ........................................... 23

Board of County Commissioners v Brown,
    520 US 397 (1997)............................................................ 24

Bonenberger v Plymouth Township, et al.,
    1996 US Dist. LEXIS 19440 (ED Pa. December 18, 1996) ........... 14

Bonsignore v City of New York,
    683 F.2d 635 (2d Cir. 1982) ........................................... 12, 15

Boyle v County of Allegheny,
    139 F.3d 386 (3d Cir. 1998) ........................................... 37

Celotex Corp. v Catrett,
    477 US 317 (1986) ........................................................... 37, 38

City of Canton v Harris
    489 US 378 (1989) ........................................................... 23, 24

City of St. Louis v Praprotnik,
     484 US 112 (1988) ...................................................................23

Delcambre v Delcambre,
     635 F.2d 407 (5th Cir. 1981) ................................... 15, 22

Denis v City of Newark,
     307 NJ Super 304 (App. Div. 1998) ...............................31

DiCosala v Kay,
     91 NJ 159 (1982) ...........................................29, 30, 35

Dixon v CEC Entertainment,
     2008 NJ Super. Unpub LEXIS 2875 *50
     (App. Div. August 6, 2008) .....................................32
     Citing, Tobia v Cooper Hosp. Univ. Med. Ctr.,
     136 NJ 335 (1994) ...............................................32
     Citing, Hoag v Brown,
     397 NJ Super 34 (App. Div. 2007) .........................32
     Citing, Weinberg v Dinger,
     106 NJ 469 (1987) ...............................................33

DT v Independent School Dist. No. 16,
     894 F.2d 1175 (10th Cir. 1990) .................................15
     Cert Denied, 498 US 879 (1990) ..............................15

EEOC v MCI International,
     829 F.Supp. 1438 (DNJ 1993) ......................................8

Gibson v. Superintendent of NJ Dept of Law
And Public Safety,
     411 F.3d 427 (3d Cir. 2005) ........................................9

Groman v Twp of Manalapan,
     47 F.3d 628 (3d Cir. 1995) ..........................................9

Halwani v Galli,
     2000 US Dist. LEXIS 9684
     (ED Pa. December 18, 1996) ........................12, 13, 21, 22
     Citing, Screws v United States,
     325 US 91, 89 L.Ed 1496, 65 S.Ct. 1031 (1945) ..........14

Hoag v Brown,
    397 NJ Super 34 (App. Div. 2007) ........................................... 32, 36

Hurdleston v New Century Fin. Servs.,
    629 F.Supp.2d 434 (DNJ 2009) ................................................... 28

Jackson v Commissioner NJSP,
    2005 US Dist. LEXIS 36399 (DNJ December 27, 2005) ............... 38
    Citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 US 574 (1986) ...................................................................... 38

Johnson v Hackett,
    284 F.Supp. 933 (ED Pa. 1968) .................................................. 14
    Affd, 460 US 325, 103 S.Ct 1108, 75 L.Ed.2d 96 (1983) .............. 14

Jones v West Point Police Dept.
    2008 US Dist. LEXIS 12201, 2008 WL 474413
    (WD Ky 2008) ....................................................................... 15, 16

Kach v Hose,
    589 F.3d 626 (3d Cir. 2009) ........................................................ 12

Kentucky v Graham,
    473 US 159, 105 S.Ct. 2099, 87 L.Ed.2d 114 (1985) .................... 25
    Citing, Monell v New York Social Services,
    436 US 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)...................... 25

Lesende v Borrero,
    2010 US Dist. LEXIS 20519 *53-59 (DNJ March 8, 2010) ......27, 28

Lugar v Edmonson Oil Co.,
    457 US 922 (1982) ........................................................................ 9

Lylo v Smith,
    2006 US Dist LEXIS 76098 (DNJ October 19, 2006) .................... 35
    Citing, DiCosala v Kay,
    91 NJ 159 (1982) ........................................................................ 35

Mark v Borough of Hatboro,
　　51 F.3d 1137 (3d Cir. 1995) ................................................11, 12
　　Citing, Bonsignore v City of New York,
　　683 F.2d 635 (2d Cir. 1982) .................................................12

Martinez v Colon,
　　54 F.3d 980 (1st Cir. 1995) .................................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
　　475 US 574 (1986) .................................................38

Monell v. Dept of Soc. Servs.,
　　436 US 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).......................25

Owens v Feigin,
　　194 NJ 607 (2008) .................................................28

Pacifico v Froggatt,
　　249 NJ Super. 153 (Law Div. 1991) .................................................31

Paul v Davis,
　　424 US 693 (1976) .................................................9

Parratt v Taylor,
　　451 US 527 (1981) .................................................26

Rode v. Dellarciprete,
　　845 F.2d 1195 (3d Cir. 1988) .................................................26

Screws v United States,
　　325 US 91 (1945) ..........................................10, 13, 14

Slinger v New Jersey,
　　2008 US Dist. LEXIS 71723 DNJ September 4, 2008) .................28

Smith v. City of Phila.,
　　2002 US Dist. LEXIS 26529 (ED Pa. September 23, 2002) ............9

Tobia v Cooper Hosp. Univ. Med. Ctr.,
　　136 NJ 335 (1994) .................................................32

Table of Contents – Table of Citations/ Defendants' Motion for Summary Judgment
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

<u>Weinberg v Dinger</u>,
    106 NJ 469 (1987) .........................................................................33

<u>West v Atkins</u>,
    487 US 42 (1988) ...........................................................................9

<u>Will v Michigan Department of State Police</u>,
    419 US 58, 105 L.Ed.2d 45, 109 S.Ct. 2304 (1989) .....................25

## I.   **PREAMBLE**

This litigation arises from a physical altercation between Douglas Stroby, a former dispatcher for Egg Harbor Township Police Department, and Police Officer Jeffrey Lancaster. The altercation followed sexual relations between Stroby's wife and Officer Lancaster.

On September 30, 2008, Stroby confronted his wife, Samantha Stroby, and she admitted that she recently had sex with Lancaster. Stroby and Samantha had known Lancaster since high school. Further, Samantha and Lancaster had dated before Samantha married Stroby. When Samantha told Stroby she recently had sex with Lancaster, Stroby went immediately to Lancaster's house to confront Lancaster and ask him why he would do this to him. Upon arrival, Lancaster's wife, Stephanie Lancaster, told Stroby that Lancaster was not at home and that he was on duty. Stroby then told Stephanie what her husband had done. Stroby then left.

Stephanie called Lancaster and told him Stroby had just been to their house and what he said to her. Although he was on duty, in full uniform, armed and driving a marked vehicle, Lancaster immediately drove to Stroby's house where Stroby and Samantha were arguing. During this argument, Stroby noticed a marked Egg Harbor Township police car in front of his house. By the time Stroby got to his front door, Lancaster was walking briskly toward the door. The two men had a brief, heated verbal exchange, followed by a physical altercation because Samantha recently had sex with Lancaster, and because

Stroby told Lancaster's wife what Lancaster had done.

On January 28, 2009, Stroby filed the instant Complaint, alleging in part that Egg Harbor Township and Chief of Police Blaze Catania are liable for Lancaster's conduct on September 30, 2008. This Brief will establish that neither Egg Harbor Township nor Chief Catania is liable for Lancaster's actions because he was engaged in a personal dispute which was not related to his employment.

## II.    **THE PARTIES**

1.    The Plaintiff, Douglas Stroby (hereinafter referred to as "Stroby"), was, at all times relevant hereto, a resident of the state of New Jersey and a former dispatcher for EHT. [See, Exhibit "1" Plaintiff's Amended Complaint at ¶2; R. 28[1]].

2.    The Defendant, Egg Harbor Township Chief of Police Blaze Catania (hereinafter referred to as "Chief Catania"), was, at all times relevant hereto, the Chief of Police of the Egg Harbor Township Police Department located in Egg Harbor Township, New Jersey. [See, Exhibit "1" Plaintiff's Amended Complaint at ¶4].

3.    The Defendant, Jeffrey Lancaster (hereinafter referred to as "Officer Lancaster"), was, at all times relevant hereto, a patrol officer with the Township of Egg Harbor Police Department. [See, Exhibit "1" Plaintiff's Amended

_____

[1] R. 28 cites to the corresponding paragraph in the statement of facts.

JUNE 1, 2010/ 10 AM

PAGE 2
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

Complaint at ¶5].

4.    Defendant, the Township of Egg Harbor (hereinafter referred to as "EHT"), was, at all times relevant hereto, a municipal corporation of the State of New Jersey located in Atlantic County, New Jersey. [See, Exhibit "1" Plaintiff's Amended Complaint at ¶3].

## III.   **PROCEDURAL HISTORY**

1.    On September 30, 2008, Officer Lancaster and Stroby were involved in a physical altercation at Stroby's home located at 33 Marsh Drive in Egg Harbor Township, New Jersey. [R. 1].

2.    At the time of this physical altercation, Officer Lancaster was on duty, but he left his assigned duty without authorization, and went to Stroby's home. [R. 58 through R. 60; R. 63].

3.    Within minutes of the physical altercation, Stroby telephoned the EHT Police Department to report the physical altercation he had with Officer Lancaster. [R. 85].

4.    On or about October 20, 2008, the EHT police department administratively charged Officer Lancaster with:

- conduct unbecoming an officer (simple assault),
- leaving an assigned post, and
- violation of the chain of command. [R. 104].

Officer Lancaster had the option to plead not guilty and challenge the charges at a formal administrative hearing, or plead guilty. [R. 105]. If Officer Lancaster

June 1, 2010/ 10 am

Page 3
Defendants' Motion for Summary Judgment
Barker, Scott & Gelfand · a Professional Corporation · Linwood, New Jersey 08221

pled not guilty to the charges and the hearing officer subsequently found him guilty, he faced termination from the EHT Police Department. [R. 105; 106]. If he pled guilty, Officer Lancaster faced suspension without pay. [R. 107].

5.    Officer Lancaster pled guilty to all administrative charges filed against him by the EHT police department. [R. 108]. He was suspended for forty-five days without pay, including the forfeiture of fifteen vacation days. [R. 110]. In addition, Officer Lancaster was stripped of his position on the EHT Emergency Response Team and ordered to undergo anger management. [R. 111].

6.    Stroby never filed any criminal charges against Officer Lancaster. [R. 114].

The Atlantic County Prosecutor's declined to commence criminal charges against Lancaster. [R. 115].

7.    On or about December 16, 2008, Stroby, through counsel, forwarded a Notice of Tort Claim to EHT stating that he had been injured by the actions of Officer Lancaster on September 30, 2008. [See, Exhibit "9" Notice of Tort Claim].

8.    On or about January 28, 2009, Stroby filed a three-count Complaint in the Atlantic County Superior Court. [See, Exhibit "2" Plaintiff's Complaint and Jury Demand].

9.    Count One of the Complaint alleged that, on September 30, 2008, Officer Lancaster violated Stroby's procedural and substantive due process

rights, his rights to be free from unreasonable searches and seizures, his right to be free from cruel and unusual punishment, and his homestead rights all as guaranteed by the First, Fourth, Eighth, Ninth and/or Fourteenth Amendments of the United States Constitution. Stroby alleged Officer Lancaster was liable for these violations, pursuant to 42 USC §1983. [See, Exhibit "2" Plaintiff's Complaint].

10.    Count Two of Plaintiff's Complaint alleged that EHT and Chief Catania were deliberately indifferent to the constitutional rights of Stroby by failing to adequately screen or train its municipal employees, including Officer Lancaster. [See, Exhibit "2" Plaintiff's Complaint at ¶3].

11.    Count Three of the Complaint alleged that on September 30, 2008, when Officer Lancaster had his physical altercation with Stroby, Officer Lancaster was acting pursuant to a policy and/or custom of EHT. This alleged policy and/or custom was deliberately indifferent to the constitutional rights of Stroby. [See, Exhibit "2" Plaintiff's Complaint at ¶2].

12.    On or about February 19, 2009, Defendants, EHT and Chief Catania, removed Stroby's Complaint to the United States District Court, District of New Jersey. [See, CM/ ECF #1, Exhibit "10" Notice of Removal].

13.    On April 7, 2009, Defendants, EHT and Chief Catania, filed an Answer to Stroby's Complaint denying any basis for liability. [See, CM/ ECF #4, Exhibit "11" Defendants Answer].

14.    On July 17, 2009, United States Magistrate Judge Karen Williams

executed a consent order granting Stroby permission to file an Amended Complaint to include state law causes of action given that the waiting period to file a complaint pursuant to the New Jersey Tort Claims act had expired. [See, Consent Order, CM/ ECF #15, Exhibit "12" Consent Order].

15.     On July 20, 2009, Stroby filed his Amended Complaint in the United States District Court, District of New Jersey. [See, Amended Complaint, CM/ ECF #16, Exhibit "13" Plaintiff's Amended Complaint].

16.     The first three counts of the Amended Complaint were identical to those of the original Complaint. [See, Exhibit "1" Amended Complaint filed in State Court,; see also, Amended Complaint, CM/ ECF #15, Exhibit "13"].

17.     Count Four of the Amended Complaint alleged a claim for damages pursuant to the New Jersey Civil Rights Act against all Defendants. [See, Amended Complaint, CM/ ECF #15 at ¶2 Exhibit "13"].

18.     Count Five of the Amended Complaint alleged a claim of false imprisonment under New Jersey common law against Officer Lancaster only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

19.     Count Six of the Amended Complaint alleged a claim of trespass under New Jersey common law and New Jersey state statute against Officer Lancaster only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

20.     Count Seven of the Amended Complaint alleged a claim of invasion of privacy under New Jersey common law against Officer Lancaster only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

21.    Count Eight of the Amended Complaint alleged a claim of negligent hiring against EHT only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

22.    Count Nine of the Amended Complaint alleged a claim of negligent training against Chief Catania and EHT only. [See, Amended Complaint, CM/ ECF #15 ¶2, Exhibit "13"].

23.    Count Ten of the Amended Complaint alleged a claim of negligent physical contact against Officer Lancaster only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

24.    Count Eleven of the Amended Complaint alleged a claim of assault against Officer Lancaster only. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

25.    Count Twelve of the Amended Complaint alleged a claim of *respondeat superior* against EHT only for the negligent acts of Officer Lancaster. [See, Amended Complaint, CM/ ECF #15 at ¶2, Exhibit "13"].

26.    On or about July 28, 2009, Defendants, EHT and Chief Catania, filed an Answer to Stroby's Amended Complaint denying any basis for liability against them. [See, Answer to Amended Complaint, CM/ ECF #15, Exhibit "14"].

JUNE 1, 2010/ 10 AM

PAGE 7
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

## IV.   STATEMENT OF FACTS[2]

## V.   LEGAL ARGUMENT

### A.   COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST EHT AND CHIEF CATANIA SHOULD BE DISMISSSED WITH PREJUDICE BECAUSE OFFICER LANCASTER WAS NOT ACTING UNDER COLOR OF LAW

#### 1.   Statutory Provision of 42 U.S.C. §1983

Section 1983 of Title 42 of the United States Code authorizes a person such as Stroby to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

To properly assert a claim for alleged violations of his constitutional rights pursuant to 42 U.S.C. §1983, Stroby must prove:

(1)   a violation of a right secured by the Constitution and laws of the

---

[2] Pursuant to Local Civil Rule 7.2, note Comment No. 3, the statement of material and undisputed facts required pursuant to L.Civ.R. 56.1 for summary judgment motions are not limited by the page length requirements of L.Civ.R. 7.2(b). See, EEOC v. MCI International, Inc., 829 F.Supp. 1438, 1444, N.1 (DNJ 1993) (Barry). For this reason, the Statement of Facts has been removed from the Brief and separately bound.

JUNE 1, 2010/ 10 AM

PAGE 8
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

United States, **and**

(2)     that the alleged deprivation was committed by a person acting under color of state law. <u>Gibson v. Superintendent of N.J. Dept. of Law and Public Safety</u>, 411 F.3d 427, 433 (3d Cir. 2005); <u>see also</u>, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

This section of the brief will establish that the actions of Officer Lancaster were not committed under color of law; and, therefore, all of Stroby's §1983 claims fail as a matter of law.

## 2.      <u>Legal Authority for "Under Color of Law"</u>

Section 1983 does not give rise to "a right to be free of injury wherever the State may be characterized as the tortfeasor," but rather the plaintiff must demonstrate that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws. <u>Smith v. City of Phila.</u>, 2002 U.S. Dist. LEXIS 26529 (E.D. Pa. September 23, 2002)[3] ; <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995); <u>Paul v. Davis</u>, 424 U.S. 693 (1976).

> "The color of state law ... is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." <u>Groman</u> 47 F.3d 628, 638. The central issue in determining whether an individual has acted under color of state law is whether the alleged infringement of federal rights is "fairly attributable to the State."

<u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982). Accordingly, a finding in the case *sub judice* that Lancaster was acting under "color of state law" when he

---

[3] Attached as Exhibit "36"

JUNE 1, 2010/ 10 AM

PAGE 9
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

allegedly assaulted Stroby is essential for §1983 liability to exist.

An action taken under the color of law is one taken under "pretense" of law, and therefore "acts of officers in the ambit of their personal pursuits are plainly excluded." Screws v. United States, 325 U.S. 91, 111 (1945). A police officer's "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994). Accordingly, to determine if an officer was acting in his or her official capacity, courts ask whether the nature of the actions performed by the officer is consistent with actions taken by a police officer. It is not sufficient to consider simply whether or not the police officer is wearing a uniform, or whether he or she is on-duty, but rather what type of action was taken (i.e., police action or private action). Screws, 325 U.S. 91, 111.

In Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994), the Third Circuit clarified the analysis to be applied to determine whether an officer, is engaged in private action rather than police action. In Barna, an off-duty police officer and his partner assaulted the officer's brother-in-law. Barna, 42 F.3d 809, 813-815. The assault occurred while the officers were off-duty and on private property. The officers were not in uniform, but were carrying police issued revolvers and night sticks. The officers assaulted the victim with their night sticks and thereafter drew their guns and threatened to arrest him. Id. Despite these facts, the Third Circuit held the officers were not acting under color of state law, but were engaged in a purely private dispute. Barna, 42 F.3d

809, 817-818. The critical factor was not that the officers used police equipment to perpetrate the assault, but that the assault arose out of the officer's familial and personal affairs. Id. The Third Circuit held that the nature of an officer's action is crucial to this determination and therefore officers' "purely private acts which [are] not furthered by any actual or purported state authority" are excluded. Barna, 42 F.3d 809, 817.

While the officers in Barna were off-duty, shortly after the Barna decision the Third Circuit in Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995) asserted that the same analysis applies when a state actor commits a purely private act while on duty. Mark, 51 F.3d 1137, 1150-1151. In Mark, it was undisputed that a member of the defendant's volunteer fire department set an intentional fire, which destroyed the plaintiff's automobile repair business. Mark, 51 F.3d at 1139. The Third Circuit held that this intentional tort was not committed "under color of law." The Third Circuit noted that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color of state law, his act must entail misuse of power, possessed by virtue of state law and made possible *only* because the wrongdoer is clothed with the authority of state law." Mark, 51 F.3d at 1150. (*emphasis added*). The Third Circuit further held that even "acts committed by a police officer ... while on duty and in uniform are not under color of state law unless they are in some way 'related to the performance of police duties.'" Relying on a prior holding

JUNE 1, 2010/ 10 AM

from the Court of Appeals for the Second Circuit, the Third Circuit in <u>Mark</u> reiterated that "if a person's actions were not committed in the performance of any actual or pretended duty, the actions were not committed under color of law." <u>Id.</u>, <u>citing</u>, <u>Bonsignore v. City of New York</u>, 683 F.2d 635, 639 (2d Cir. 1982).

In a recent decision, the Third Circuit once again held that an individual who only had his own interests in mind and was "bent on a singularly personal frolic" was not acting under color of law. <u>Kach v. Hose</u>, 589 F.3d 626, 649 (3d Cir. 2009). The defendant in <u>Kach</u> was charged with supervising and maintaining a secure environment for schoolchildren. <u>Id.</u> In clear violation of that mandate, the defendant engaged in an impermissible relationship with one of the very schoolchildren whose safety he was supposed to ensure. <u>Id.</u> The defendant presented no evidence that his actions were committed on anyone's initiative but his own or with anything other than his own interests in mind. <u>Id.</u> Thus, the Third Circuit held that defendant was not acting under color of law when he committed the acts that form the basis of Kach's §1983 claim against him so there was no need to decide if Kach's constitutional rights were violated.

District Courts in the Third Circuit have routinely applied the analysis of <u>Mark</u> to cases where police officers commit purely private acts while on duty and in uniform. <u>Halwani v. Galli</u>, 2000 U.S. Dist. LEXIS 9684 (E.D. Pa.

JUNE 1, 2010/ 10 AM

PAGE 12
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

December 18, 1996).[4] In <u>Halwani</u>, the defendant officer and the plaintiff were acquaintances for several years when a personal dispute between the two men arose. As a consequence of this dispute, on April 25, 1998, the defendant officer entered the plaintiff's place of business (a 7-11 convenience store) located in the Borough of Darby, Pennsylvania. Dressed in full uniform, the defendant officer threatened plaintiff's life and further threatened to bring charges of fraud and illegality against him. <u>Halwani v. Galli</u>, 2000 U.S. Dist. LEXIS 9684. The plaintiff contacted the Darby Police Department. Despite plaintiff's repeated complaints, no action or investigation was conducted until after the plaintiff contacted the Delaware District Attorney's Office, who then criminally charged the defendant officer. <u>Halwani</u>, 2000 U.S. Dist. LEXIS 9684, *3-4. The District Court held that despite being on duty and in full uniform when the threats were made, the defendant officer's actions arose entirely from a personal dispute he had with the plaintiff. <u>Halwani</u>, 2000 U.S. Dist. LEXIS 9684, *3-4. The defendant officer's threats were purely private and in no way were they 'related to the performance of police duties.'" <u>Halwani</u>, 2000 U.S. Dist. LEXIS 9684, *3-4. The fact that the threats took place while the defendant officer was on duty and in uniform did not convert purely private action into color of law. <u>Id.</u> The District Court in <u>Halwani</u>, citing the holding of <u>Screws v. United States</u>, 325 U.S. 91. 111 (1945), held "it is not sufficient to consider simply whether or not

---

[4] Attached as Exhibit "37"

JUNE 1, 2010/ 10 AM

PAGE 13
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

the police officer is wearing a uniform, or whether he or she is on-duty, but rather what type of action was taken (i.e., police action or private action). Halwani, 2000 U.S. Dist. LEXIS 9684 *7-8, citing, Screws v. United States, 325 U.S. 91. 111, 89 L. Ed. 1495, 65 S. Ct. 1031 (1945) ("It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded"). See also, Bonenberger v. Plymouth Township, et al., 1996 U.S. Dist. LEXIS 19440 (E.D.Pa. Dec. 18, 1996)[5] ("absent any meaningful indicia of state authority, actions taken by someone who happens to be a police officer are not necessarily attributable to the state"); Johnson v. Hackett, 284 F. Supp. 933, 937 (E.D. Pa. 1968), aff'd, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983). (Acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law).

Applying the same analysis as applied in the Third Circuit, Courts in other Circuits have also found that an officer's actions which are not 'calculated to preserve the peace, protect life and liberty, arrest violators of the law or prevent crime" are purely private acts which do not constitute actions under

---

[5] Attached as Exhibit "38"

June 1, 2010/ 10 am

PAGE 14
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

color of law. <u>Martinez v Colon</u>, 54 F.3d 980, 987 (1st Cir. 1995) (an unintended shooting of a police officer at the police station, during the course of harassment and taunting by a fellow officer who was on duty and in uniform, did not constitute conduct under color of law where the court concluded that the behavior of the harassing officer represented "a singularly personal frolic[,]" and in no way was or purported to be in furtherance of the exercise of any police power); <u>see also</u>, <u>Delcambre v. Delcambre</u>, 635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff); <u>see also</u>, <u>D.T. v. Independent School Dist. No. 16</u>, 894 F.2d 1176 (10th Cir. 1990) (finding sexual molestation of students by public school teacher/coach that occurred on an excursion unconnected to school activities during school vacation period when teacher was not employed by the school district did not occur under color of state law), <u>cert. denied</u>, 498 U.S. 879, (1990); <u>Bonsignore v. City of New York</u>, 683 F.2d 635 (2d Cir. 1982) (holding that officer who used police handgun to shoot his wife and then commit suicide did not act under color of state law even though he was required to carry the police gun at all times). In <u>Jones v. West Point Police Dep't.</u>, 2008 U.S. Dist. LEXIS 12201, 2008 WL 474413 (W.D. Ky. 2008)[6]

---

[6] Attached as Exhibit "39"

June 1, 2010/ 10 am

PAGE 15
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

the plaintiff had met the defendant police officer on three occasions and had engaged in casual conversation with the defendant officer on at least one of those occasions. One night plaintiff was inebriated and walking in her driveway when she noticed the police officer in his police cruiser at the end of her driveway. The officer was on duty and in uniform. While Plaintiff could not recall the exact details of what happened, she did recall that she was driven by the officer in his cruiser to a local park where she was sexually assaulted by the officer. According to the victim, after the assault, the police officer even responded to an official call to aid a woman who was abandoned on the side of a road. Even under these circumstances, the Court found that the police officer did not act under color of state law when he sexually assaulted the plaintiff. Jones v. West Point Police Dep't., 2008 U.S. Dist. LEXIS 12201, 2008 WL 474413 (W.D.Ky. 2008).

### 3.   **Analysis of the Instant Case**

In the case *sub judice,* on September 30, 2008, when Lancaster went to Stroby's home it was for a purely private reason, and in no way was it related to the performance of his police duties. It is undisputed that on September 30, 2008, Stroby had known Lancaster for approximately 20 years. [R. 27]. The two men had attended the same high school and Stroby knew that before he married Samantha, Lancaster had a romantic relationship with her. [R. 32]. Stroby testified at his deposition that, because of this prior relationship, he questioned Samantha regarding several text messages to Lancaster when

JUNE 1, 2010/ 10 AM

PAGE 16
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

Stroby had been out of town. [R. 33]. According to the deposition of Stroby, he first confronted Samantha before September 30, 2008, and Samantha repeatedly denied any romantic involvement with Officer Lancaster. [R. 34]. Stroby testified at his deposition that he never fully believed this and continued to periodically press his wife on this issue. [R. 35]. Finally on September 30, 2008, at approximately 2:00 p.m., Samantha admitted that she had a "one-night stand with Jeff [Lancaster]" while Stroby was away. [R. 36].

After hearing the confession, Stroby and Samantha decided that Samantha would leave the house. [R. 37, 38]. While Samantha collected her belongings, Stroby went for a drive to "cool down" and to determine how he was going to tell the children about the situation. [R. 38]. It was during this drive that Stroby decided to go to Lancaster's home and ask him "why he would do this to him." [R. 41]. Upon arrival at Lancaster's home, Stroby spoke with Lancaster's wife, Stephanie. [R. 44]. Stephanie told Stroby that Lancaster was not home at which time Stroby "felt it necessary to tell her that Jeff and Sam had sex because, if the roles were reversed, [he] would want to know." [R. 46]. After a brief conversation, Stroby left the Lancaster residence. [R. 49, 50]. Stephanie then telephoned Lancaster and informed him of Stroby's visit. [R. 61]. Lancaster testified at his deposition that, during this phone call, Stephanie told him that Stroby had just left their house, that he told her about Lancaster's affair with Samantha, and that he was looking for Lancaster to talk about it. [R. 62].

JUNE 1, 2010/ 10 AM

PAGE 17
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

Immediately after the one to two minute phone call from his wife, Lancaster drove directly to Stroby's home at 33 Marsh Road in EHT in order to speak with Stroby. [R. 63]. Lancaster did not tell his supervisors, or anyone at the EHT Police Department, that he was going to Stroby's house on September 30, 2008. [R. 64].

Stroby testified at his deposition that he had returned home and was talking with Samantha about the details of her affair with Lancaster when he came downstairs and noticed that a police car was in front of his house. [R. 68]. Stroby asserts that, at first, he did not see anyone; however, within seconds of seeing the police car, he saw Lancaster walking up the walkway toward the front door. [R. 69]. Stroby testified at his deposition that, upon seeing Lancaster, he swung the screen door open and said, "well, look who it is." [R. 70]. According to Stroby's deposition testimony, his written statement to internal affairs, and his verbal statement to internal affairs, Lancaster's first words were that [Stroby's] business with his wife had nothing to do with [Lancaster] and his wife. Lancaster's deposition testimony coincides with Stroby's account. [R. 73; 74]. Stroby responded to this comment by stating that, as far as he was concerned, "[Lancaster] screwing his wife was now his business." [R. 75]. Even before Lancaster had mentioned his or Stroby's wife, Stroby knew that Lancaster was at his home to discuss what Stroby had told Lancaster's wife. [R. 77].

At deposition, Stroby testified that Lancaster punched him in the lip. [R.

JUNE 1, 2010/ 10 AM

PAGE 18
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

78]. Stroby testified that he responded to this punch by punching Lancaster "right back." [R. 79]. Lancaster testified at his deposition that it was Stroby who punched him first. [R. 80]. It is undisputed there was a physical altercation between Lancaster and Stroby at Stroby's home shortly after Stroby informed Lancaster's wife, Stephanie, that Lancaster recently had sex with Stroby's wife, Samantha. [R. 81].

After a brief struggle, the two men were at an impasse and Stroby told Lancaster to get out of his house. [R. 82]. Lancaster did leave, but he returned because he picked up the wrong sunglasses. [R. 83]. Stroby told Lancaster to wait outside and that he would retrieve the sunglasses; however, Lancaster entered the Stroby home and retrieved his glasses on his own. [R. 84]. Within minutes of Lancaster leaving the residence, Stroby contacted the Egg Harbor Police Department to file a complaint. [R. 85].

Based on Stroby's complaint and the internal affairs investigation, which included recorded statements of Stroby, Lancaster, and Samantha Stroby, the EHT Police Department, through Chief of Police Blaze Catania, administratively charged Lancaster with:

- conduct unbecoming an officer,
- leaving an assigned post, and
- violation of the chain of command.

[R. 104].

Lancaster had the option to plead not guilty and challenge the charges at a formal administrative hearing, or plead guilty. [R. 105]. If Lancaster pled not

JUNE 1, 2010/ 10 AM

PAGE 19
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

guilty to the charges, and the hearing officer subsequently found him guilty, he faced termination from the EHT Police Department. [R. 106]. If he pled guilty, Officer Lancaster faced suspension without pay. [R. 107].

Lancaster pled guilty to the departmental charges, and in so doing, on October 20, 2008, wrote to Chief Catania "I have no intent to request a hearing, as my guilt is self-evident." [R. 108]. Moreover, Lancaster wrote "I used poor judgment when I made a decision to handle a personal matter while on duty and in uniform." [R. 109]. In pleading guilty to the charges as filed, Lancaster was suspended for a total of forty-five days total, without pay, including the forfeiture of fifteen vacation days. [R. 115]. In addition, Lancaster was stripped of his position on the EHT Emergency Response Team and ordered to undergo anger management. [R. 111].

Based on the foregoing, the facts before the Court establish that all of Lancaster's actions were entirely private and had no relation to his police duties or responsibilities. There is no dispute that Lancaster's arrival at the Stroby home, and the altercation which arose thereafter, was not calculated to preserve the peace, protect life and liberty, arrest violators of the law, or prevent crime. In fact, the Amended Complaint reiterates the personal nature of Lancaster's actions by repeatedly stating that, at no time on September 30, 2008, was Lancaster:

1.    dispatched by 911 operators or other dispatchers to the home of Plaintiff Douglas Charles Stroby for any reason;

June 1, 2010/ 10 AM

PAGE 20
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

2.     ordered by superior officers to report to the home of Plaintiff Douglas Charles Stroby or undertake a community caretaking visit at the home of Plaintiff Douglas Charles Stroby;

3.     requested by any private citizen to report to the home of Plaintiff Douglas Charles Stroby or undertake a community caretaking visit at the home of Plaintiff Douglas Charles Stroby;

4.     at the home of Plaintiff Douglas Charles Stroby at the request of Plaintiff Douglas Charles Stroby for any reason;

5.     operating under the auspices of an arrest warrant while at or on or in the property of Plaintiff Douglas Charles Stroby;

6.     operating under the auspices of a search warrant while at or on or in the property of Plaintiff Douglas Charles Stroby;

7.     operating under the auspices of court order while at or on or in the property of Plaintiff Douglas Charles Stroby;

8.     operating under the auspices of probable cause of perceived criminal activity or activity which would qualify as a disorderly persons offense or a petty disorderly persons offense while at or on or in the property of Plaintiff Douglas Charles Stroby;

9.     operating under the auspices of reasonable suspicion of perceived criminal activity or activity which would qualify as a disorderly persons' offense or a petty disorderly persons offense while at or on or in the property of Plaintiff Douglas Charles Stroby;

10.     operating under the auspices of any emergency circumstances or exigency while at or on or in the property of Plaintiff Douglass Charles Stroby;

11.     was Plaintiff Douglass Charles Stroby questioned, interrogated, formally arrested or handcuffed.

(See, Plaintiff's Amended Complaint ¶¶12 through 20, 23, and 32).

Like the defendant officer in Halwani, Officer Lancaster committed a purely private act, which was not furthered by any actual or purported state

JUNE 1, 2010/ 10 AM

PAGE 21
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

authority. Such an act is not committed under color of law. <u>Barna</u>, 42 F.3d 809, 816. It is of no consequence that Officer Lancaster was in full uniform, with his duty weapon, driving his marked police car. The fact that the event took place while Officer Lancaster was on duty and in uniform did not convert a purely private action into an action under color of law. <u>Halwani</u>, 2000 U.S. Dist. LEXIS 9684, *3-4.

This case is similar to that of the Fifth Circuit case of <u>Delcambre</u> in that, Officer Lancaster did not threaten to arrest Stroby. Furthermore, the record shows clearly that the altercation at issue in this case was one of a personal nature. Throughout his statement to internal affairs, and throughout his deposition testimony, Stroby refers to Officer Lancaster as "Jeff" and not by his title, <u>i.e.</u>, "officer". Looking at the facts in their entirety, this case presents only an argument between two men over a woman, marital infidelity, and violation of personal privacy. There is no evidence that Officer Lancaster's conduct toward Stroby was under the pretense of carrying out any police duty. Without dispute, the purpose of Stroby's visit to Officer Lancaster's house, and Officer Lancaster's visit to Stroby's house, was to address marital infidelity, a personal and highly sensitive issue. Therefore, Counts II and III of Stroby's Amended Complaint alleging violations against EHT and Chief Catania under 42 USC §1983 should be dismissed, as there is no evidence that Officer Lancaster's conduct was committed under color of state law.

JUNE 1, 2010/ 10 AM

PAGE 22
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

**B.   IN THE ALTERNATIVE, EVEN IF THIS COURT ACCEPTS *PER ARGUENDO* THAT LANCASTER ACTED UNDER COLOR OF LAW, COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST EHT SHOULD BE DISMISSSED WITH PREJUDICE BECAUSE NO EHT POLICY OR CUSTOM INFLICTED THE INJURIES**

The cases of <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988), and <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), set forth the proposition that local governing bodies can be sued directly under §1983 for "monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Praprotnik</u>, 485 U.S. at 121; <u>Harris</u>, 489 U.S. at 386. Municipal liability attaches only where execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. <u>Monell</u>, 436 U.S. at 694. In the case of either policy or custom, Stroby has no evidence that any EHT official who has the power to make policy is responsible for either an affirmative proclamation of a policy or acquiescence in a well-settled custom leading to Constitutional violations. <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990).

Furthermore, the official policy must be "the moving force of the Constitutional violation" in order to establish the liability of a government body under §1983. <u>Berg v. County of Allegheny</u>, 219 F.3d 261 (3d Cir. 2000). Where a plaintiff claims that the municipality has not directly inflicted an injury, but

JUNE 1, 2010/ 10 AM

PAGE 23
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. <u>See</u>, <u>Canton</u>, 489 U.S. at 391-392. That is, the plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. <u>Bd. of Cty. Comm'rs. v Brown</u>, 520 U.S. 397 (1997) .

A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. <u>Id.</u> at 413. Only where adequate scrutiny would lead a reasonable policymaker to conclude that the plainly obvious consequence would be the deprivation of a third party's federally protected right can the official's failure to monitor or scrutinize an employee constitute "deliberate indifference." <u>Id.</u> A finding of culpability simply cannot depend on the mere probability that any officer will inflict any constitutional injury. <u>Id.</u> at 412. Rather, it must depend on a finding that the officer was highly likely to inflict the particular injury suffered by the plaintiff. <u>Id.</u>

Stroby has no evidence that either EHT or Chief Catania knew of, and was deliberately indifferent to, knowledge that Lancaster was "highly" likely to go to the home of private citizen and get into an altercation. On the contrary, Lancaster had an exemplary service record. [<u>R.</u> 112]. In fact, the record demonstrates that up until September 30, 2008, Lancaster had been disciplined

JUNE 1, 2010/ 10 AM

PAGE 24
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

only once in the six years he had been employed by EHT. [R. 112]. On September 26, 2008, Lancaster received a written reprimand for allowing his driver's license to expire and not cleaning his gun properly. [R. 112, 23, 24]. Thus, Stroby fails to demonstrate that any municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right would follow the decision, so Counts II and III should be dismissed.

### C.   IN THE ALTERNATIVE, EVEN IF THE COURT DETERMINES THAT LANCASTER WAS ACTING UNDER COLOR OF LAW COUNTS II AND III OF STROBY'S COMPLAINT ALLEGING VIOLATIONS OF 42 USC §1983 AGAINST CHIEF CATANIA SHOULD BE DISMISSSED WITH PREJUDICE BECAUSE CHIEF CATANIA WAS NOT PERSONNALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATION

Stroby names Egg Harbor Township Chief of Police Blaze Catania as a Defendant in both his individual and official capacity. Preliminarily, it is important to note that the United States Supreme Court has held that "public officials acting in their official capacities do not constitute "persons" under §1983". Will v. Michigan Department of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989) ("A suit against a state official in his or her official capacity ... is no different from a suit against the state itself"). Therefore, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citing Monell, 436 U.S. 658 at 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611). Accordingly, Stroby's official capacity

JUNE 1, 2010/ 10 AM

PAGE 25
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

suit against Chief Catania should be dismissed as this claim is no different than one against Egg Harbor Township.

For liability to attach at the individual level, the state official must have been personally involved in the challenged conduct or knowingly acquiesced in it -- liability cannot be predicated on principles of *respondeat superior* alone. See, Parratt v. Taylor, 451 U.S. 527, 537 (1981); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence ... made with appropriate particularity.").

In the case *sub judice*, Stroby testified at his deposition that the only reason he named Chief Catania as a Defendant in this lawsuit was because he is the Chief of Police, and because Stroby's personal opinion was that Chief Catania should have fired Officer Lancaster. [R. 121]. Stroby testified that he has no facts to support an allegation that Chief Catania knew Officer Lancaster was leaving his assigned post to go to Stroby's home or that anyone in the EHT police knew. [R. 122]. Stroby also testified that he had no facts to support an allegation that Chief Catania had any role in the hiring of Officer Lancaster. [R. 123]. Thus, Chief Catania should be dismissed from Plaintiff's Amended Complaint with prejudice.

June 1, 2010/ 10 am

Page 26
Defendants' Motion for Summary Judgment
Barker, Scott & Gelfand · a Professional Corporation · Linwood, New Jersey 08221

**D.  STROBY'S NEW JERSEY CIVIL RIGHTS ACT CLAIMS, COUNT IV, PURSUANT TO N.J.S.A. 10:6-2, SHOULD BE DISMISSED BECAUSE STROBY HAS NOT SUFFICIENTLY PLED HIS CLAIMS; AND, FURTHERMORE, THE SAME ANALYSIS WHICH APPLIES TO DISMISS STROBY'S FEDERAL CONSTITUTIONAL CLAIMS SHOULD ALSO CAUSE THE COURT TO DISMISS ANY OF STROBY'S CLAIMS UNDER THE NJCRA.**

### 1.  Failure to State a Cause of Action

Stroby simply pleads in Count IV of his amended complaint as follows:

"Defendants did by their actions individually and under purported color of law, intentionally and recklessly violate Plaintiff's civil rights as defined and protected by N.J.S.A. 10:6-2." (See, Exhibit "1" at page 12).

In an unpublished decision, Judge Debevoise of the United States District Court for the District of New Jersey dismissed Count Eight of the plaintiff's complaint because of the plaintiff's failure to specifically cite any claims under the New Jersey Constitution. Lesende v. Borrero, 2010 U.S. Dist. LEXIS 20519 *53-54 (D.N.J. March 8, 2010).[7] The plaintiff in that complaint was much more specific than Stroby was in the instant case. The Lesende plaintiff's complaint stated that,

"Newark...interfered with and/or attempted to interfere with by threats, intimidation, and/or coercion with [sic.] the exercise and/or enjoyment of the plaintiff of her substantive due process, equal protection rights, privileges and/or immunities secured by the constitution of the United States and/or State of New Jersey, in violation of N.J. Stat. Ann. 10:6-2." Lesende v. Borrero, 2010 U.S. Dist. LEXIS 20519 *53-54 (D.N.J. March 8, 2010).

The United States Supreme Court has stated that a pleading that offers

---

[7] Attached as Exhibit "40"

June 1, 2010/ 10 AM

Page 27
Defendants' Motion for Summary Judgment
Barker, Scott & Gelfand · a Professional Corporation · Linwood, New Jersey 08221

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) <u>citing</u>, <u>Bell Atlantic Corp., et al. v. Twombly et. al.</u>, 550 U.S. 544, 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) <u>citing, Twombly</u>, 550 U.S., at 557. Therefore, under the analysis of <u>Lesende</u>, <u>Iqbal</u>, and <u>Twombly</u>, Count IV should be dismissed for failure to articulate a cause of action.

## 2.   <u>Federal Analysis Under §1983 Also Applies To New Jersey Civil Rights Act.</u>

The New Jersey Legislature adopted the New Jersey Civil Rights Act (NJCRA) in 2004 intending to assure a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection. <u>Owens v. Feigin</u>, 194 N.J. 607 (2008). It was specifically designed to "incorporate and integrate seamlessly" with existing civil rights jurisprudence. <u>Slinger v. New Jersey</u>, 2008 U.S. Dist. LEXIS 71723 D.N.J. September 4, 2008)[8] (given its legislative history, the court will apply existing § 1983 civil rights jurisprudence to the NJCRA); <u>Hurdleston v. New Century Fin. Servs.</u>, 629 F.Supp. 2d 434 (D.N.J. 2009). (the NJCRA's legislative history also makes it clear that it was only intended to protect substantive rights). Thus, the NJCRA does not create any new substantive due process

---

[8] Attached as Exhibit "41"

right, nor does it rewrite New Jersey civil rights jurisprudence. It simply provides another vehicle through which a person can seek legal redress for violations of, inter alia, New Jersey's State Constitution and laws.

Therefore, the same reasons for dismissing Stroby's Federal Constitutional Claims articulated in sections A through C above, also apply to dismiss any analogous claims that Stroby is alleging pursuant to the New Jersey Constitution under Count Four of the Amended Complaint. Thus, Count IV should also be dismissed with prejudice.

### E. STROBY'S COUNT VIII, NEGLIGENT HIRING, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR A COMMMON LAW CLAIM OF NEGLIGENT HIRING IN NEW JERSEY

"[T]he tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual. ..." <u>Di Cosala v. Kay</u>, 91 N.J. 159, 172. (1982). "Accordingly, the negligent hiring theory has been used to impose liability in cases where the employee commits an intentional tort, an action almost invariably outside the scope of employment ... where the employer either knew or should have known that the employee might engage in injurious conduct towards third persons." <u>Id.</u> at 173. When presented with a negligent hiring claim, New Jersey Courts have held that its tort of negligent hiring or retention of an employee has the same two basic components: forseeability and proximity to plaintiff's actual harm suffered. New Jersey Courts have held as follows with regard to its components:

JUNE 1, 2010/ 10 AM

PAGE 29
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

The first involves the knowledge of the employer and forseeability of harm to third persons. An employer will only be held responsible for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons. The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury plaintiff suffered.

Di Cosala v. Kay, 91 N.J. 159, 173-74 (1982)

In this case, Lancaster underwent a psychiatric examination, an interview, and a pre-employment background check, which included a State criminal history investigation. [R. 4 through 6]. These separate and overlapping screening procedures undermine the Stroby claim that EHT inadequately screened Lancaster for employment. The EHT screening procedures revealed no dangerous attribute of Lancaster sufficient for EHT to reasonably foresee that Lancaster was a risk to harm other persons.

Stroby testified at deposition that he had no facts to support an allegation that EHT inadequately screened Officer Lancaster prior to being hired. [R. 117]. EHT was aware of Officer Lancaster's two prior juvenile arrests and one adult arrest, essentially a bar fight in South Carolina. [R. 6 through 17]. These altercations years before Lancaster was hired, do not give EHT notice that Lancaster would, years after serving well as a police officer, have an affair with a co-worker's wife and then get into a physical altercation with the same co-

JUNE 1, 2010/ 10 AM

PAGE 30
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

worker, while on duty, at the co-worker's home. Hiring Lancaster, despite his prior arrests, has no connection to the altercation with Stroby. Stroby has no evidence to establish foreseeability and proximity. Thus, Stroby's claim for negligent hiring should be dismissed.

Moreover, EHT may have immunity for Stroby's claim for negligent training pursuant to N.J.S.A. 59:2-3 which states in part:

> a.   A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
>
> b.   A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.

Subsection (a) deals with "high-level policymaking decisions" which are made at the planning level and involve the weighing of competing policy considerations; subsection (b) deals with the operational level of decisionmaking and does not implicate high level policymaking decisions. Denis v. City of Newark, 307 N.J. Super. 304, 316 (App. Div. 1998) (holding that the decision to hire or retain a police officer who has been charged with official misconduct is a discretionary decision, but refusing to rule on the immunity issue in Denis based on an insufficient factual record; but see Pacifico v. Froggatt, 249 N.J. Super. 153, 157 (Law Div. 1991)(finding that the tort of negligent hiring is not one which is barred by the Tort Claims Act). The decision to hire Lancaster was a discretionary decision made by the highest level policymakers in EHT, including Mayor McCullough, Committeeman Frank Sutton, Committeeman

Stanley Glassey, Committeeman Bob Reed, Police Chief John Coyle, and Business Administrator Peter Miller. [R. 18]. The decision to retain Lancaster was also a discretionary decision made by Chief Catania. Therefore, both the decision to hire Lancaster and the decision to retain Lancaster should be protected by the New Jersey Tort Claims Act. [R. 104 through R. 112]. Thus, Stroby's claim for negligent hiring should be dismissed.

**F.    STROBY'S COUNT IX, NEGLIGENT TRAINING, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR A COMMMON LAW CLAIM OF NEGLIGENT TRAINING IN NEW JERSEY**

Liability may be imposed on an employer who fails to perform its duty to train and supervise employees. Dixon v. CEC Entertainment, 2008 N.J. Super. Unpub. LEXIS 2875 *50 (App. Div. August 6, 2008)[9] citing Tobia v. Cooper Hosp. Univ. Med. Ctr., 136 N.J. 335, 346 (1994). A claim based on negligent hiring or negligent supervision is separate from a claim based on respondeat superior. Dixon v. CEC Entertainment, 2008 N.J. Super. Unpub. LEXIS 2875 at *50 citing Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007). Unlike, respondeat superior, this negligence claim [negligent training] "covers acts committed outside the scope of employment." Dixon v. CEC Entertainment, 2008 N.J. Super. Unpub. LEXIS 2875 at *50 quoting Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007). An employer, however, is liable for negligent

_____

[9] Attached as Exhibit "42"

JUNE 1, 2010/ 10 AM

PAGE 32
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

supervision [training] only if all the requirements of an action for negligence exists. <u>Dixon v. CEC Entertainment</u>, 2008 N.J. Super. Unpub. LEXIS 2875 at *50 <u>citing</u> Restatement (Second) of Agency, § 213(c) comment a (1957). Thus, a person conducting an activity through agents is subject to liability for harm resulting from the agents' conduct if the person is negligent or reckless "in the supervision of the activity." <u>Dixon v. CEC Entertainment</u>, 2008 N.J. Super. Unpub. LEXIS 2875 at *50-51 <u>citing</u> Restatement (Second) of Agency, §213(c). Since negligence involves a breach of duty of care that causes injury, the issue is whether defendant's alleged failure to properly supervise and train its employees was a breach of its duty of care to plaintiffs, which, in turn, was a proximate cause of their damages. <u>Dixon v. CEC Entertainment</u>, 2008 N.J. Super. Unpub. LEXIS 2875 at *51 <u>citing</u> <u>Weinberg v. Dinger</u>, 106 N.J. 469, 484 (1987).

In the instant case, Lancaster did receive training from EHT which taught him that his actions in going to confront Stroby at his private residence while on duty was inappropriate and against the rules and regulations of the department. Lancaster acknowledged receipt and understanding of the Rules and Regulations of the Egg Harbor Township Police Department, which state in part the following:

- 3.1.6. Conduct themselves in accordance with high ethical standards, on and off-duty;

- 4.1.1 Performance of duty. All employees shall promptly perform their duties as required or directed by law, department rule, policy or directive,

or by lawful order of a superior officer;

- 4.6.3 Prohibited Activity on Duty. Employees who are on duty are prohibited from engaging in activities which are not directly related to the performance of their duty (e.g., sleeping, conducting private business, or gambling).

(See, Exhibit "34," Lancaster Personnel Manual Acknowledgements and EHT PD Rules and Regulations).

Lancaster acknowledged that he violated the Rules and Regulations of the EHT PD in going to confront Stroby. [R. 108, 109]. Lancaster accepted the discipline that he was issued and did not contest it in any way. [R. 108, 109]. Therefore, it was not a lack of training which caused Stroby's alleged injury, but rather Lancaster's lack of good judgment on this particular occasion. There is no evidence EHT breached its duty of care in training Lancaster; and, there is no evidence Lancaster's training was a proximate cause of Stroby's damages. Lancaster knew better, but did worse. Thus, Count IX of Plaintiff's Amended Complaint should be dismissed with prejudice.

In addition, the Egg Harbor Township Police Department (EHTPD) maintains a Police Manual of Rules and Regulations, approved by the Governing Body of Egg Harbor Township, which includes a statement of mandatory compliance for EHTPD members, a mission statement, a statement of organizational values, a code of ethics, as a comprehensive, detailed body of rules and regulations which expressly and clearly mandates certain acceptable behavior and proscribes certain unacceptable behavior. [See, Exhibit "34" EHT

JUNE 1, 2010/ 10 AM

PAGE 34
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

PD Rules and Regulations]. The decisions regarding what policies to include in the personnel manual and rules and regulations are high level discretionary decisions, as well as the decision regarding what training to offer Lancaster. Thus, EHT's actions should be barred by the New Jersey Tort Claims Act, specifically N.J.S.A. 59:2-3 [see infra. at page 30 through 31].

**G.    STROBY'S COUNT XII, NEGLIGENCE BASED ON A THEORY OF *RESPONDEAT SUPERIOR* AGAINST EGG HARBOR TOWNSHIP, SHOULD BE DISMISSED BECAUSE STROBY CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR *RESPONDEAT SUPERIOR* LIABILITY IN NEW JERSEY**

The common law principle of respondeat superior provides that an employer or principal is liable for his employee's or agent's wrongful acts committed within the scope of the employment or agency relationship. Wright v. State, 169 N.J. 422, 436, 778 A.2d 443 (2001). The scope of employment standard "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Lylo v. Smith, 2006 U.S. Dist. LEXIS 76098 (D.N.J. October 19, 2006)[10]; citing, Di Cosala v. Kay, 91 N.J. 159, 169 (1982). Conduct is generally considered to be within the scope of employment if "it is the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part,

---

[10] See attached Exhibit "43"

JUNE 1, 2010/ 10 AM

PAGE 35
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221

by a purpose to serve the master." Id. (quoting, Restatement (Second) of Agency §228 (1957)).

In the case *sub judice*, for the same reasons Officer Lancaster was not acting under "color of law" for purposes of §1983 liability, Officer Lancaster was not acting "within the scope of his employment" for purposes of *respondeat superior* liability. There is nothing in the record to even remotely suggest that it was within Officer Lancaster's scope of employment to divert himself from his police duties without permission of or notice to his employer, drive to Stroby's home to confront Stroby, and engage in a physical altercation with Stroby. Under these facts, there is no basis for a reasonable jury to conclude that Officer Lancaster was acting "within the scope of his employment" so as to cause *respondeat superior* liability to attach to Egg Harbor Township for the conduct which Lancaster admitted, and to which Plaintiff pled, to be wrong and outside the limits of his duties as a police officer.

Additionally, the New Jersey Tort Claims Act provides immunities to public entities for "the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. "Thus, there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007). Accordingly, since Stroby claims Lancaster's actions constituted willful misconduct under the New Jersey Tort Claims Act, Stroby's

June 1, 2010/ 10 am

Page 36
Defendants' Motion for Summary Judgment
Barker, Scott & Gelfand · a Professional Corporation · Linwood, New Jersey 08221

claim against EHT pursuant to New Jersey common law should be dismissed.

## H.   SUMMARY JUDGMENT STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ.P. 56(c). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See, Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). It is the burden of the moving party to demonstrate that no genuine issue of material fact remains. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Supreme Court of the United States stated that in evaluating a defendant's motion for summary judgment:

> The judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"A fact is 'material' only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is 'genuine' if the evidence is

such that a reasonable fact finder could return a verdict for the nonmoving party." Id. "Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to material facts.'" Jackson v. Commissioner NJSP, 2005 U.S. Dist. Lexis 36399 (D.N.J. December 27, 2005),[11] (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The non-moving party must demonstrate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

## VI.  CONCLUSION

For the foregoing reasons, it is respectfully requested that summary judgment be granted to the Defendants, Egg Harbor Township and Chief Blaze Catania.

Respectfully Submitted,

**BARKER, SCOTT & GELFAND
a Professional Corporation**

A. Michael Barker, Esquire

Dated: 9 JUNE 2010.

---

[11] See attached Exhibit "44"

JUNE 1, 2010/ 10 AM

PAGE 38
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
BARKER, SCOTT & GELFAND · A PROFESSIONAL CORPORATION · LINWOOD, NEW JERSEY 08221